UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVIVA WILDE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.  EDCV 07-1171-JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On September 11, 2007, Aviva Wilde ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of her application for Disability Insurance Benefits. On September 21, 2007, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On December 13, 2007, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on March 14, 2008, defendant filed an Answer to the Complaint. On May 29, 2008, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

///

**BACKGROUND**

On October 1, 2004, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ["AR"] at 85, 88). In her application, plaintiff alleged a disability onset date of November 10, 2003 due to back and neck injuries. (AR at 95-96). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 65-66, 72-73). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 77).

On June 12, 2006, the ALJ conducted a hearing in Palm Springs, California. (See AR at 695-718). Plaintiff appeared at the hearing with counsel and testified. (See AR at 697-99, 704-15). Abbe May, a vocational expert, also testified at the hearing. (AR at 700-04). At the close of the hearing, the ALJ decided to send plaintiff's case to a neurologist for evaluation and interrogatories. (See AR at 715-18). On January 26, 2007, the ALJ conducted a supplemental hearing in Palm Springs, California. (See AR at 719-42). Plaintiff appeared at the hearing with counsel and testified.[1] (See AR at 726-32, 740-41). William DeBolt, M.D., a medical expert, and Troy Scott, a vocational expert, also testified at the hearing. (See AR at 722-25, 730, 732-39). Thereafter, on February 22, 2007, the ALJ issued his decision denying benefits to plaintiff. (AR at 16-27). The ALJ determined that plaintiff had the following severe impairments: degenerative spondylosis of the cervical spine and lumbar spine, status post bilateral carpal tunnel release and left shoulder bursitis. (AR at 18). The ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or equal the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 19). The ALJ determined that plaintiff retained the residual functional capacity to perform less than a full range of light work, but could no longer perform her past relevant work as a registered nurse. (See AR at 20, 26-27). The ALJ further determined that plaintiff had acquired skills from her past work as a registered nurse that are transferable to other occupations with

---

[1] The ALJ accepted as an offer of proof that plaintiff's husband, David Peel, would verify and testify in support of all of plaintiff's statements regarding her activities of daily living. (See AR 731-32).

2

jobs existing in significant numbers in the national economy. (See AR at 26-27). Accordingly, the ALJ concluded that plaintiff was not disabled through the date of his decision. (AR at 16, 27). The Appeals Council denied plaintiff's timely request for review of the ALJ's decision. (See AR at 5-7, 11-12).

Thereafter, plaintiff appealed to the United States District Court.

## PLAINTIFF'S CONTENTION

The ALJ failed to carry the Administration's burden at step five of the sequential analysis by identifying a significant number of jobs that plaintiff could perform within her residual functional capacity.

## STANDARD OF REVIEW

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## DISCUSSION

**A.    The Sequential Evaluation**

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Second, the ALJ must determine whether the claimant has a severe impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Parra, 481 F.3d at 746. If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity. Id.

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement to disability insurance benefits. Id. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.     The Conflict Between the Vocational Expert's Testimony and the Dictionary of Occupational Titles at Step Five of the Sequential Process**

In her sole claim, plaintiff argues that the ALJ failed to meet his burden at step five of the sequential process and that substantial evidence does not support the ALJ's reliance on the vocational expert's testimony that plaintiff could perform other occupations with jobs existing in significant numbers in the national economy despite her limitations. Specifically, plaintiff argues that the vocational expert's testimony is inconsistent with the United States Department

of Labor's Dictionary of Occupational Titles ("DOT") and that, given her residual functional capacity, plaintiff cannot perform three of the four occupations identified by the vocational expert.  (See Joint Stipulation at 5-7, 15-17).

In his decision, the ALJ found that plaintiff retained the following residual functional capacity:

> [Plaintiff] has the residual functional capacity to perform light work. Specifically, [plaintiff] is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently.  Out of an 8-hour workday, [plaintiff] is able to stand and/or walk for 6 hours and sit for 6 hours with a sit/stand option.  She is precluded from overhead or repetitive use of the left arm, but she is able to occasionally work overhead with the right arm and perform occasional fine manipulation with the left hand. [Plaintiff] is precluded from climbing ladders, ropes, and scaffolds.  She is able to perform other postural activities occasionally.

(AR at 20).

The ALJ incorporated these findings regarding plaintiff's limitations into the hypothetical he posed to the vocational expert at the January 26, 2007 supplemental hearing.  After the ALJ instructed the vocational expert to "make sure your testimony is confined to the [Dictionary of Occupational Titles ("DOT")] and what it says," the ALJ asked the vocational expert to let him know if he "disagree[d] in any manner or means with the DOT."  (AR at 733).  The ALJ then posed the following hypothetical to the vocational expert:

> [A]ssume this 51-year-old individual with a nursing degree and being a registered nurse[2], can lift 20 pounds occasionally, frequently ten; can stand and walk for a period of six hours out of

---

[2] In his decision, the ALJ relied on the vocational expert's testimony at the June 12, 2006 hearing that plaintiff's had acquired work skills from her past relevant work as a registered nurse.  (See AR at 26; see also AR at 701-02).  Here, plaintiff does not contest the ALJ's determination regarding the transferability of the skills she acquired as a registered nurse.

an eight-hour day, and can stand six hours out of an eight-hour day with an option to sit, stand or walk periodically to relieve pain or discomfort. Person further is limited due to left shoulder pain in the left upper extremity to no overhead use or repetitive use of the left arm. Can occasionally climb, but I'll say no ladders, ropes or scaffolds . . . occasionally climb things other than ladders, ropes, and scaffolds such as stairs and ramps; occasional balance, kneel, crouch, crawl and stoop. Further, the person is limited to occasional use of reaching, including overhead with the left arm, occasional handling, gross manipulation with the left hand, occasional fingering, fine manipulation with the left hand. Person further has no limitations of a[n] exertional nature, and has no non-exertional psychiatric limitations. . . . I take it the person could not do the medium work[3] of a registered nurse. Is that correct?

(AR at 733-34). The vocational expert testified that an individual with these limitations could not perform the work of a registered nurse, but could perform the following nursing positions:

---

[3] The vocational expert had previously identified plaintiff's past relevant work as registered nurse as medium, skilled work. (AR at 733). The DOT also assigns each occupation a strength rating that represents the overall strength requirements that are considered to be important for average, successful work performance. The DOT defines medium work as:

> Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Light Work.

Dictionary of Occupational Titles, Fourth Edition, 1991, Appendix C, available at http://www.oalj.dol.gov/libdot.htm (follow "Appendices" hyperlink; then follow "Appendix C: Components of the Definition Trailer " hyperlink). The DOT defines light work as:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work.

Id.

school nurse (light, skilled), infection control nurse (light, skilled), office nurse (light, skilled) and nurse consultant (sedentary, skilled). (AR at 734-35). The vocational expert further testified that 221,000 registered nursing jobs exist in California and 2 million exist in the national economy. (AR at 735). Based on his experience, training, education and knowledge of the nursing industry, the vocational expert testified that these numbers would be eroded by 30 percent if the individual had the residual functional capacity to perform light work. (See AR at 735-36).

The ALJ discussed the vocational expert's testimony in his decision and accepted and adopted the vocational expert's testimony in concluding that plaintiff had "acquired work skills from past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy." (AR at 27). The ALJ noted that, pursuant to Social Security Ruling ("SSR")[4] 00-4p, the vocational expert's testimony was consistent with the information contained in the DOT. (Id.). Accordingly, the ALJ determined that although plaintiff could not perform the full range of light work, a finding of "not disabled" was appropriate under the framework of Rules 201 and 202 of the medical-vocational guidelines given plaintiff's age, education and transferable work skills, and, thus, that plaintiff had not been disabled through the date of his decision. (Id.).

At step five of the sequential evaluation, the ALJ must determine whether the claimant's impairment prevents him or her from performing any other substantial gainful activity. Parra, 481 F.3d at 746. At this step, the burden is on the Commissioner to show that the claimant may perform other types of work in the national economy, given the claimant's age, education, and work experience. Lounsburry, 468 F.3d at 1114. The ALJ can meet the burden of showing that there is other work in "significant numbers" in the national economy that the claimant can perform by referring to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P,

---

[4] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

Appendix 2, or by eliciting the testimony of a vocational expert. Lounsburry, 468 F.3d at 1114 (quoting Tackett v. Apfel, 180 F.3d 1094, 1098-1099, 1101 (9th Cir. 1999)); Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988). In order for the vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations. Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995); Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). The hypothetical should be "accurate, detailed and supported by the medical record." Tackett, 180 F.3d at 1101.

SSR 00-4p clarifies the standards for identifying and resolving conflicts between occupational evidence provided by a vocational expert and information in the DOT. SSR 00-4p, 2000 WL 1898704, at *2. Pursuant to SSR 00-4p, before relying on a vocational expert's testimony to support a disability determination, an ALJ must do three things. First, at the hearing, the ALJ has an "affirmative responsibility to ask about any possible conflict between [the vocational expert's] evidence and information provided in the DOT." Id. at *4; see id. at *2 ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."). An ALJ may not properly rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("[W]e address the question whether, in light of the requirements of [Social Security Ruling] 00-4p, an ALJ may rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles. We hold than an ALJ may not."). If the ALJ does not ask the vocational expert whether his testimony conflicts with the DOT, the reviewing court cannot determine whether substantial evidence supports the ALJ's findings. Id. at 1153-54 (citing Prochaska v. Barnhart, 454 F.3d 731, 736 (7th Cir. 2006)); see also Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence."). Second, if the vocational expert's testimony appears to conflict with the DOT, the ALJ must

"obtain a reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704, at *4. Third, if the vocational expert's testimony is not consistent with the information in the DOT, the ALJ "explain in the determination or decision how he or she resolved the conflict. . . . irrespective of how the conflict was identified." Id.

In this case, the ALJ instructed the vocational expert to "make sure your testimony is confined to the [Dictionary of Occupational Titles ("DOT")] and what it says," and to let the ALJ know if he "disagree[d] in any manner or means with the DOT." (AR at 733). Thus, the parties do not dispute that the ALJ met his burden at the hearing with respect to asking the vocational expert whether his testimony was consistent with the DOT. Rather, plaintiff argues that the vocational expert's testimony that plaintiff could perform three of the four nursing occupations he identified deviated from the DOT and that this deviation went without explanation. (Joint Stipulation at 6-7). Specifically, plaintiff argues that, given her residual functional capacity, she cannot perform the occupations of school nurse, infection control nurse and office nurse. (See Joint Stipulation at 6-7, 15-16).

Indeed, it appears that although the ALJ found that plaintiff could perform only occasional fine manipulation with her left hand (AR at 20), and included a limitation of occasional fingering with the left hand in the hypothetical posed to the vocational expert (AR at 734), the DOT specifies that the occupations of school nurse, infection control nurse and office nurse each require "frequent" fingering.[5] See DOT 075.124-010 (Nurse, School), available at 1991 WL 646737; DOT 075.127-034 (Nurse, Infection Control), available at 1991 WL 646744; DOT 075.374-014 (Nurse, Office), available at 1991 WL 646753. Defendant's argument that the vocational expert's testimony did not conflict with the DOT because plaintiff is right-hand dominant and her residual functional capacity limited her to "occasional" fingering

---

[5] The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") defines "occasionally" as "[a]ctivity or condition exists up to 1/3 of the time" and "frequently" as "[a]ctivity or condition exists from 1/3 to 2/3 of the time." See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix C (1993 ed.) (available on Westlaw). The SCO defines "fingering" as "[p]icking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling." Id.

only as to her left hand (Joint Stipulation at 12-13; see AR at 204, 704) does not negate the apparent conflict between the DOT and the vocational expert's testimony that plaintiff could perform these three nursing occupations.  It may very well be that the frequent fingering required by these three nursing occupations does not require the use of both hands, but can be done with plaintiff's dominant right hand.  The record before the Court, however, does not indicate whether plaintiff can perform the fingering requirements of the school nurse, infection control nurse and office nurse occupations despite the manipulative limitations to her left hand.  Indeed, the vocational expert offered no explanation as to why his testimony deviated from the DOT even though the ALJ specifically asked the vocational expert to indicate whether he "disagree[d] in any manner or means with the DOT."  (AR at 733).  Nor did the ALJ acknowledge or explain in his written decision how he resolved the apparent conflict between the vocational expert's testimony and the DOT and the ALJ's residual functional capacity determination.  The ALJ's decision merely states that the ALJ "accept[ed] and adopt[ed] the testimony of the vocational expert" and that, "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the [DOT]." (AR at 27).  See SSR 00-4p, 2000 WL 1898704, at *4 (requiring that the ALJ explain in the determination or decision how he or she resolved the conflict); Massachi, 486 F.3d at 1153 (stating that "[t]he procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the [DOT].").  Accordingly, the record lacks substantial evidence to support the vocational expert's testimony that plaintiff could perform the occupations of school nurse, infection control nurse and office nurse despite her limitations.[6]  See Light v. Soc. Sec. Admin., 119 F.3d 789,

---

[6] In the Joint Stipulation, Plaintiff states that the vocational expert failed to identify the corresponding DOT description numbers for the occupations he identified. (See Joint Stipulation at 7, 15).  The Court notes that the vocational expert's failure to identify the DOT numbers for the occupations does not make his statement inconsistent with the DOT or meaningless.  Plaintiff herself reconciled the vocational expert's testimony with the definitions in the DOT, and defendant does not dispute the DOT numbers identified by plaintiff. (Joint Stipulation at 7, 11 n.5).  Any error that resulted from the vocational expert's failure to identify the DOT numbers is harmless and, thus, cannot serve as a basis for remand.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (a decision of the ALJ will not be reversed for errors that are harmless).

793 (9th Cir. 1997) (stating that an ALJ "'may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.'" (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995))).  Furthermore, defendant's attempt to offer explanations post hoc for the deviation between the vocational expert's testimony and the DOT is not sufficient to cure the error.  See Vista Hill Found. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may affirm an administrative decision only on grounds articulated by the agency); Barbato v. Comm'r, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (a court may remand if the decision of the ALJ as to claimant's entitlement to benefits on its face does not adequately explain how a conclusion was reached, even if Social Security Administration can offer proper post hoc explanations for such unexplained conclusions).

Moreover, the Court cannot say that the ALJ's unsupported reliance on the vocational expert's testimony that plaintiff could perform the light, skilled occupations of school nurse, infection control nurse and office nurse was harmless.  See Burch, 400 F.3d at 679.  Plaintiff does not dispute that the fourth occupation identified by the vocational expert, nurse consultant, which is defined as sedentary and requires only occasional fingering[7], is within her residual functional capacity.  See DOT 075.127-014 (Nurse, Consultant), available at 1991 WL 646741. Instead, plaintiff argues that the identification of a single sedentary occupation which plaintiff can perform does not carry the ALJ's burden at step five of the sequential process.  (See Joint Stipulation at 7-10, 16-17).

In his decision, the ALJ relied on the vocational expert's testimony and, accordingly, concluded:

> "[A]lthough [plaintiff's] additional limitations do not allow [plaintiff] to perform the full range of light work, considering [plaintiff's] age, education and transferable work skills, a finding of "not disabled"

---

[7] See supra n.5.

11

|   |   |
|---|---|
| 1 | is appropriate under the framework of Medical-Vocational Rules |
| 2 | 201.07, 201.15, 202.07, and 202.15.[8] |

(AR at 27). However, if plaintiff cannot perform the occupations of school nurse, infection control nurse and office nurse because their fingering requirements exceed plaintiff's residual functional capacity, Rule 202.00(c) of the medical-vocational guidelines would direct a finding of "disabled" as of the date of the ALJ's decision. Rule 202.00(c) provides, in relevant part:

> [F]or individuals of <u>advanced age</u> who can no longer perform vocationally relevant past work and . . . who have only skills that are not readily transferable to a <u>significant range of semi-skilled or skilled work</u> that is within the individual's functional capacity . . . the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled.

20 C.F.R. Part. 404, Subpt. P, App. 2 § 202.00(c) (emphasis added).

In this case, the ALJ determined that plaintiff was 55 years-old at the time of the decision and, thus, had reached advanced age[9], plaintiff could no longer perform her past relevant work as a registered nurse, and that plaintiff could perform light work. (See AR at 20, 26). The Ninth Circuit has "construe[d] the phrase 'significant range of . . . work' in Rule 202(c) to require a

---

[8] Rules 201 and 202 of the medical vocational guidelines apply where an individual's residual functional capacity is limited to sedentary work and light work, respectively. 20 C.F.R. Part. 404, Subpt. P, App. 2 §§ 201.00, 202.00; see id. §§ 201.07 (directing a finding of not disabled for an individual who is limited to sedentary work, is of advanced age, has a high school education or more, and has acquired transferable skills from past previous skilled work), 201.15 (same, with respect to an individual closely approaching advanced age), 202.07 (directing a finding of not disabled for an individual who is limited to light work, is of advanced age, has a high school education or more, and has acquired transferable skills from past previous skilled work), 202.15 (same, with respect to an individual closely approaching advanced age). It appears that the ALJ used medical-vocational rules 201.07, 201.15, 202.07 and 202.15 as a framework in finding that plaintiff was not disabled given the vocational expert's testimony that plaintiff could perform the sedentary occupation of nurse consultant and the light occupations of school nurse, infection control nurse and office nurse (AR at 734-35), as well as the ALJ's finding that plaintiff was considered an individual closely approaching advanced age on her disability onset date, and an individual of advanced age at the time of the ALJ's decision. (AR at 26). See 20 C.F.R. 404.1563(d)-(e) (defining "closely approaching advanced age" as "age 50-54" and "advanced age" as "age 55 or older").

[9] See supra n.8.

12

significant number of occupations." Lounsburry, 468 F.3d at 1116-17 (also stating that "Rule 202.07 explicitly incorporates language from Rule 202.00(c)" and that "[o]ne occupation does not constitute a significant range of work; thus, because claimant's skills transferred precisely to one occupation at her residual functional capacity, Rule 202.00(c) directed a finding of disability). Thus, if plaintiff's residual functional capacity does not allow her to perform the three light, skilled nursing occupations identified by the vocational expert, Rule 202.00(c) would direct a finding of disability.

Additionally, it is not clear whether the occupation of nurse consultant constitutes "work which exists in significant numbers" in the local or national economy. See 42 U.S.C. § 423(d)(2)(A) (defining "work which exists in the national economy" as "work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country."); see also 20 C.F.R. § 404.1566. When asked how many jobs within the four nursing occupations identified by the vocational expert were available in the local and national economies, the vocational expert testified only as to the overall number of existing registered nursing positions. Specifically, the vocational expert testified that 221,000 registered nursing jobs existed in California and 2 million existed in the national economy, and that these numbers would be eroded by 30 percent due to a light residual functional capacity. (See AR at 735-36). Neither the vocational expert's testimony nor the ALJ's decision specifies the number of jobs that existed in each of the occupations identified by the vocational expert. Thus, the record does not indicate how many of the 221,000 registered nursing positions locally or 2 million nationally are in the category of nurse consultant. Consequently, if plaintiff can only perform the occupation of nurse consultant, the record does not provide substantial evidence for the ALJ's conclusion that plaintiff's work skills are transferable "to other occupations with jobs existing in significant numbers in the national economy." (See AR at 27).

**C.     Remand is Required to Remedy Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would

remedy defects in the ALJ's decision, and where the record should be developed more fully. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

      Here, the Court finds remand appropriate. The record in this case lacks substantial evidence to support the ALJ's reliance on the vocational expert's testimony that, given the ALJ's determination of plaintiff's residual functional capacity, plaintiff could perform the occupations of school nurse, infection control nurse and office nurse as described by the DOT. Neither the vocational expert nor the ALJ provided any explanation for the deviation between the vocational expert's testimony and the DOT descriptions of these three nursing occupations. On remand, the ALJ must determine whether plaintiff can actually perform the requirements (i.e., frequent fingering) of the occupations of school nurse, infection control nurse and office nurse despite her ability to perform only occasional fine manipulation with her left hand. Before relying on a vocational expert's testimony to support his disability determination on remand, the ALJ must elicit a reasonable explanation for any apparent conflicts between the vocational expert's testimony and the DOT, and explain in his written decision how the conflict was resolved.[10] See SSR 00-4p, 2000 WL 1898704, at *1-2, 4.

///

///

---

[10] In the Joint Stipulation, plaintiff argues that the use of Rule 201.00(e), which applies to individuals limited to sedentary work, provides the proper framework for decisionmaking given the vocational expert's identification of a single sedentary occupation within plaintiff's residual functional capacity. (See Joint Stipulation at 9-10). See 20 C.F.R. Part. 404, Subpt. P, App. 2 § 201.00(e) (with respect to sedentary work, "[t]he presence of acquired skills that are readily transferable to a significant range of skilled work within an individual's residual functional capacity would ordinarily warrant a finding of ability to engage in substantial gainful activity . . . ") (emphasis added); Lounsburry, 468 F.3d at 1117 (construing "the phrase 'significant range of . . . work' in Rule 202(c) to require a significant number of occupations."); Distasio v. Shalala, 47 F.3d 348, 350 (9th Cir. 1995) ("Because the Secretary failed to produce evidence that any job categorized as light work was available to Distasio, but only produced evidence of sedentary work available to him, the use of grid rule 202.14 as a framework for decisionmaking was not based on substantial evidence."). As explained above, however, the lack of substantial evidence to support the ALJ's reliance on the vocational expert's testimony that plaintiff could perform the school nurse, infection control nurse and office nurse occupations despite her limitations constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments again. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: June 20, 2008

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE